## SUPREME COURT.

### THE PEOPLE agt. JOHN HENDRICKSON, JR.

On a trial for murder, *statements made by the defendant, upon oath, before the jury summoned to make inquisition concerning the death, and before he had been accused of the murder,* are admissible as evidence for the prosecution.

Why? Because he was examined before the coroner's inquest in the capacity of a *witness.* He had not then been *accused,* or in any *legal* sense suspected of the crime. He had the same right as any other witness, to decline answering any question, if, in his opinion, the answer would tend to involve him in a criminal charge. Having testified, and having omitted to avail himself of his privilege to decline answering, his statements must be deemed *free* and *voluntary.*

*December General Term,* 1853.

By the Court—HARRIS, Justice.——On the evening subsequent to the death of his wife, the defendant was sworn and examined as a witness before the coroner's inquest. Upon such examination he gave an account of the circumstances attending the death, after which, upon being asked when he had been in Albany, he answered that it was *two weeks* ago the last Saturday. Upon being asked whether he had not been there since, he, answering as if correcting himself, said he had been in Albany *a week* ago the last Saturday. He was again asked whether he had not been in Albany still later than that, and he replied that he had been there on the last Saturday. Upon being inquired of, he stated the object for which he went to Albany, and mentioned several places where he had been while there.

The People agt. John Hendrickson, Jr.

He said he did not remember having been in Springsteed's drug store. Upon the trial, the counsel for the prosecution offered to prove what the defendant had thus stated before the coroner's inquest. It was objected to, on the ground that such statements were not voluntary. The objection was overruled, and the testimony was received. No charge had been made against the defendant, at the time he was examined, nor is there any evidence that he was suspected of crime, unless the fact is to be inferred from the tenor of his examination. The question is thus presented whether, upon a trial for murder, statements made by the defendant, upon oath, before the jury summoned to make inquisition concerning the death, and before he had been accused of the murder, are admissible as evidence for the prosecution.

Confessions have been appropriately divided into two classes, *judicial* and *extra judicial.* (1 *Greenl. Ev.* § 216.) The former embraces the preliminary examination authorized by statute, when a party accused of crime is brought before a magistrate. Such confessions, attended, as they are, with peculiar solemnities, take higher rank as evidence than other mere admissions or declarations. Such other admissions and declarations constitute the class of *extra judicial* confessions. They are to be proved as other facts are proved, and, being proved, are to be submitted to the consideration of the jury.

The preliminary examination, which the magistrate, before whom a person accused of crime is brought, is authorized to take, must be conducted in the manner prescribed by law, or it will be deemed irregular and rejected. Thus it is required that the examination should not be taken upon oath. Whenever, therefore, it has appeared that the party accused has been sworn, the examination has been excluded. Smith's case, (1 *Stark's R.* 242;) River's case, (7 *Carr. & Payne,* 177;) Pikesley's case, (9 *Carr. & Payne,* 124.) This rule is confined to the official examination of the *party accused.* It is no objection to a confession, as such, that it has been made when the party was under oath.

Accordingly, where a prisoner has been examined as a witness upon a charge against another for the same offence, his deposition was received in evidence, upon his own trial, as a confession. PARKE, J., said, "he might, on that, as well as on any other occasion, when called *as a witness*, have objected to answer any questions which might have a tendency to expose him to a criminal charge, and not having done so, his deposition is evidence against him." Haworth's case, (4 *Carr. &amp; Payne*, 254.) In Tubby's case, (5 *Carr. &amp; Payne*, 530,) it was proposed to read in evidence a statement made upon oath by the prisoner. VAUGHAN, B., said, "the question is, is it the statement of the prisoner upon oath? Clearly it is not, for he was not *a prisoner* at the time he made it."

In the case of Merceron, (2 *Stark.* 366,) a magistrate was tried upon an irdictment for misconduct in office. He had previously been examined before a committee of the House of Commons, and it was proposed to prove what he had said upon that examination. The evidence was objected to, not because the statements were made upon oath, but because, having been compelled to attend before the committee, the declarations were not voluntary, but it was held to be admissible. It is true that the same judge before whom this case was tried, subsequently questioned the correctness of the report. Rex agt. Gilham, (1 *Moody's C. C.* 203,) but so far as it is entitled to any weight as an authority, it is against the doctrine that a confession is to be excluded as evidence merely because it has been made under oath.

In Wheaton's case, (2 *Moody's C. C.* 45,) a charge had been made against the prisoner before the Lord Mayor of London, for forgery, but the complainant failed to make such a case as would warrant a commitment. After this the prisoner was examined before Commissioners in bankruptcy, in relation to the same transactions. Upon his trial, upon an indictment for forgery, his statements, when examined before the commissioners, were offered in evidence, and were received. The question was subsequently presented to the fifteen judges. It was insisted that, the prisoner having been compelled to testify, his

answers were not admissible as evidence against him. But the judges were of opinion that the evidence was properly received.

In the case of Boughton, tried in North Carolina, (7 *Iredell*, 96,) the defendant had been examined on oath before the grand jury, touching the murder for which he was subsequently indicted. On the trial, his statements before the grand jury were offered in evidence and received. Upon an application for a new trial it was insisted that the testimony before the grand jury ought not to have been received, because, having been given under oath, it was not voluntary. The motion for a new trial was denied. RUFFIN, Ch. J., said, "it is certainly no objection to the evidence, merely that the statement of the prisoner was given by him *as a witness* under oath. He might have refused to answer questions when he could not do so without criminating himself, and the very ground of that law is, that his answers are deemed voluntary and may be used afterwards to criminate or charge him in another proceeding. Such is clearly the law."

The only valid objection that can be taken to any *extra judicial* confession is, that it was not voluntary. No witness is bound to answer any question, when the answer will tend, in the least degree, to criminate him. Of this he is made the judge. If, waiving the right to object on this ground, he proceeds to answer, his statements are to be regarded as voluntary and may be used against him for all purposes. (2 *Starkie's Ev.* 50; 1 *Phil. Ev.*, *Cowen & Hill's ed.*, 110; *Roscoe's Cr. Ev.*, ed. 1852, 38; 1 *Greenleaf's Ev.* § 219.) In every such case, there, the proper inquiry is, not whether the statement was made under oath, but whether it was free and voluntary, or was made under the influence of fear or hope. In the one case, the confession may always be proved—in the other, never. There may be difficulty in determining whether a confession has been made under the influence of hope or fear, but, that question being determined, the question of admissibility is also determined.

I am aware that there are three or four reported cases which have been regarded as sustaining a different doctrine. The principal. of these are Lewis' case, (6 *Carr. & Payne*, 161,) Davis' case, (6 *Carr. & Payne*, 177,) and Owen's case, (9 *Carr. & Payne*, 238.) These are the cases principally relied upon as sustaining the doctrine that a statement made upon oath is not to be regarded as voluntary, and therefore not receivable as evidence. A brief examination of these cases will show, I think, that instead of sustaining the position, in support of which they are cited, they may all be referred to the general criterion in respect to the admissibility of extra judicial confessions already stated.

In Lewis' case the charge was poisoning. The magistrate, on the day he committed the defendant, had summoned her with several other persons before him, and examined them all on oath touching the poisoning. When he had concluded the examination he committed Lewis for trial. Baron GURNEY, upon the trial, refused to receive the examination, thus taken, as evidence. He said that as the deposition had been taken at the same time as all the other depositions on which she was committed, and on the very same day on which she was committed, he did not think it was receivable. He added, also, that he did not think the examination was perfectly voluntary.

In Davis' case, a father and daughter had together been indicted for receiving stolen goods. Upon the trial, it appeared that the daughter had been examined as a witness against her father before the committing magistrate. It was proposed to prove what she then said, but Baron GURNEY refused to hear it. He said, " if, after having been a witness, you make her a prisoner, nothing of what was said then, can be admitted as evidence."

In Owen's case, (9 *Carr. & Payne*, 83 *and* 238,) there were three defendants. They were twice tried, once for a rape, and then for murder. Before the coroner's inquest was held, they had all been arrested, and they were brought before the coroner in custody. They were each asked whether they wished to give evidence, and each said he did. They were then

severally sworn and each made his statement upon oath. These statements were offered in evidence. It was conceded by the counsel for the defendants that, if they had come voluntarily before the coroner *as witnesses*, their statements would have been evidence against them.

He placed his objection on the ground that they had been brought before the coroner *as prisoners* and not as witnesses. They had been treated by the coroner as persons charged with crime, and not as witnesses, for, before they were examined, he inquired whether they were desirous of giving evidence. Under such circumstances, the examination might well be regarded as *judicial* in its character, and not as a mere examination of witnesses; and yet, upon the first trial, the prosecution was allowed to prove their statements.

Upon the trial for murder, the evidence was excluded by Baron GURNEY, and, I think, properly. The examination itself was illegal, and the statements could not be regarded as voluntary. The examination of a party *in custody* upon a charge of crime has never been allowed to be taken upon oath, and it is well settled that where a judicial examination is rejected for irregularity, proof of the statements upon such examination will not be received.

Besides these three cases, which, it should be observed, are all *nisi prius* decisions, and made too, by *the same judge*, Wheeley's case, (8 *Carr. & Payne*, 250,) has been referred to for the same purpose. In that case the defendant had been accused of poisoning his wife. He had been brought before the coroner, upon the inquest, in custody. He there made a statement which, when offered in evidence against him upon his trial, purported to have been made upon oath. Baron ALDERSON held that, being upon oath, it could not be received.

The report of the case is very meagre, but enough appears to show that the defendant was brought before the coroner as a *party accused*, and not as a witness. This case was referred to upon Owen's first trial which took place the next year. (9 *Carr. & Payne*, 83.) It is there stated that Baron ALDERSON had rejected the statement of the defendant because it was on

oath, and taken while the defendant was in custody.  WILLIAMS, J., said he knew that his brother ALDERSON had rejected the evidence, but that he also knew that there had been a re-action in opinion, and he would therefore receive the evidence.   It is stated elsewhere that Baron ALDERSON was in the next court at the time, and that Justice WILLIAMS had consulted with him.   (*See Jay on the Admissibility of Confessions,* 63.) .

Mr. Greaves, the learned editor of Russell's Treatise on Crimes, in a note referring to the cases of Lewis and Davis, above cited, says that, after the decision in Wheater's case, it may perhaps be doubted whether the fact that the prisoners had been examined on oath *as witnesses,* was a sufficient reason for rejecting their depositions.  (2 *Russ. on Crimes, Phil. ed. of* 1852, 856, *note.*   If the depositions offered in evidence were to be regarded as having been made by *witnesses,* then, obviously, they are within the principle of Wheater's case, and ought not to have been rejected.   If, on the other hand, they are to be considered as the *judicial* examination of a party accused or suspected of crime, as I think they may be, although such examination may have been irregularly conducted, then they were properly excluded.

The rule applicable to such cases is, I think, accurately stated by Joy, in the treatise above cited.   " A statement," he says, " not compulsory, made by a party, *not at the time a prisoner under a criminal charge,* is admissible in evidence against him, although it is made upon oath."   The same writer adds, " that there are conflicting opinions of judges at *nisi prius* on this point, but the proposition appears to be established by high authority."   Mr. Phillips, too, in his last edition, after noticing the *decisions* on the subject, " it may be laid down generally, (citing Wheater's case, among others, for the position,) that a statement upon oath, by a person not being a prisoner, and when no suspicion is attached to him, the statement not being compulsory, nor made in pursuance of any promise of favor, is admissible in evidence against him."   (*See Roscoe's Crim. Ev., Phil. ed. of* 1852, 50.)

The author cannot be understood as using the term "suspicion" in its popular sense. It cannot be that the fact whether or not some person may have entertained an undisclosed opinion or conjecture, in respect to the guilt of the party, can be made a criterion for determining whether a confession is admissible in evidence or not. The *suspicion* must have so far become tangible as to make it the subject of proof. The party must, at least, have been *accused*, though he may not have been arrested. That this is so, is evident from the facts in Wheater's case, upon which, chiefly, Mr. Phillips relies in support of his proposition. Wheater had been accused of forgery. He had been arrested upon the charge and brought before the Lord Mayor for examination. The proof against him not being sufficient to warrant a commitment, he was discharged. After this, he was examined as a witness in some bankrupt proceeding. Having been indicted for the forgery, his statements *as a witness* were received in evidence against him.

Of all the English cases that have been cited, this alone was brought before the *fifteen judges*. The decision was sustained. It is held that, inasmuch as the defendant when he testified was not charged with the crime, and had not objected to answer, as he might, on the ground that his statements might have a tendency to criminate him, such statements. might be proved as his voluntary confessions. If the mere fact that somebody had thought the defendant guilty of the crime, at the time he testified, would have been sufficient to the evidence, the proof of this fact was at hand. But he was examined as a witness in a legal proceeding. He was not then under accusation for the crime, and, under these circumstances, it was deliberately adjudged that what he said was to be regarded as his voluntary confession. Brougham's case, already noticed, is to be regarded as sustaining the same doctrine.

From this review, I think it must be apparent, that it is only when *a party accused* has been examined on oath, that his statements are to be rejected when offered in evidence against him. The general rule, that what a person says, when examined as a *witness* in a legal proceeding may be used in

evidence against him, has not been restricted or qualified.   The witness speaks at the peril of having his statements turned against himself.   He may refuse to answer any question, the answer to which may tend, in any degree, to involve him in a criminal charge.   If, waiving this privilege, he proceeds to testify, his statements, though upon oath, are to be regarded as free and voluntary, and are receivable as evidence against him.

It has been said that the very fact that a witness objects to answer will excite suspicion, and may thus tend to involve him in an accusation.   This may be so.   A refusal to answer a pertinent question may be supposed to betray conscious guilt; but against this the law has furnished no protection.   It guards the witness against *involuntary self-crimination,* but not against the unfavorable surmises which his refusal to answer may suggest.   It is only because his answer, if given, will be deemed to be voluntary, that a witness is excused from answering in any case.

In the case before us, the defendant was examined before the coroner's inquest, in the capacity of a witness.   He had not then been accused; nor was he, in any legal sense of the term, suspected of the crime for which he was subsequently indicted and tried.   He had the same right as any other witness to decline answering any question, if, in his own opinion, the answer would tend to involve him in a criminal charge.   If, after having so declined, he had still been required to answer, what he said could not have been used against him.   Having testified, and having omitted to avail himself of his privilege to decline answering, his statements must be deemed free and voluntary, and were properly received in evidence against him upon the trial.

I think, too, that evidence of the conversations between the defendant and his wife, and also the conversation between the defendant and his brother-in-law, Hungerford, was properly received.   The defendant was charged with the murder of his wife.   The marital relation existing between them furnished a strong presumption in favor of his innocence.   In the absence

The People agt. John Hendrickson, Jr.

of proof to the contrary, it was to be presumed that he loved her and would protect her.

It was important, therefore, for the prosecution, if it could, to repel this presumption by proof that the defendant had disregarded the claims of connubial duty. For this purpose, evidence tending, however slightly, to show an alienation of the affection; anything from which the jury might infer a desire to be free from the burden of one who was no longer the object of regard, was competent. Suppose it could have been proved that the defendant had said that he *hated* his wife, and wished to be rid of her, would any one doubt that this might be proved to rebut the presumption that he loved her? So any conduct or declarations evincing unkindness or disrespect, though less decisive in their character as evidence, were admissible as tending to show the state of the defendant's feelings towards his wife.

Nor do I think it was error to allow the will of Van Deusen, the defendant's father-in-law, to be given in evidence. By that will the wife of the testator had become entitled to the whole estate for life. It was only upon the death of her mother that the defendant's wife would receive any part of her father's property. Though the evidence may not have been very important, it was not irrelevant to show that any pecuniary expectations which the defendant might have entertained, by reason of his alliance with the family, had been disappointed.

As this is a case involving the life of the defendant, I have examined it with a disposition to give him a new trial, if any, even the slightest errror should be found to have been committed. But, upon the most deliberate and anxious consideration of all the questions presented, I am constrained to say that I find no error in the proceedings. The judgment of the Court of Oyer and Terminer should therefore be affirmed.

Justices WATSON and WRIGHT concurred.